## MRS. L. WILSON NORTHCROSS v. LOEW'S MEMPHIS THEATRE COMPANY AND FLEISCHMAN CONSTRUCTION COMPANY.

Western Section. December 22, 1925.

Certiorari denied by Supreme Court January 19, 1926.

1. **Negligence. Doctrine of res ipsa loquitur applies when building under process of demolition collapses.**

In an action against the contractor and owner to recover damages caused by the collapse of a building being demolished, held the doctrine of res ipsa loquitur applies as to both contractor and owner.

2. **Negligence. The unexplained falling of a building or other structure creates a presumption of negligence.**

Where a contractor is in charge of the erection or demolition of a building, and the building falls, the maxim res ipsa loquitur obtains, and the contractor will be required to show the accident happened through no want of care on his part.

3. **Negligence. Doctrine of res ipsa loquitur defined.**

The maxim, res ipsa loquitur is in part based on the consideration that when the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident which the plaintiff is unable to present.

4. **Pleading. Under doctrine of res ipsa loquitur not necessary to plead specific acts of negligence.**

Where res ipsa loquitur applies, the plaintiff need not allege specific acts of negligence. And if negligence is alleged it is mere surplusage.

5. **Negligence. Under doctrine of res ipsa loquitur defendant must prove facts inconsistent with negligence.**

Where facts are shown which invoke the doctrine of res ipsa loquitur if there are any facts inconsistent with negligence it is for the defendant to prove them.

6. **Negligence. Owner of building must exercise reasonable care to prevent injury to adjoining owner.**

It is the general rule that a duty is imposed upon the owner of a building to exercise reasonable care and diligence so that the building will not collapse and cause injury to adjoining owners.

7. **Negligence. Owner of property is charged with knowledge of defects revealed by reasonable inspection.**

The owner of property will be chargeable with knowledge of a defect which a reasonable inspection would have revealed.

8. **Negligence. Owner cannot shift responsibility for collapse of building to independent contractor.**

The duty of exercising care being absolute in its nature cannot be devolved upon others, but it is one of those absolute duties which rests upon every owner of fixed property. It is therefore quite immaterial by what grade of agent or servant the owner assumes to perform it; he will be answerable for the negligence of that agent or servant, under the rule of respondeat superior. He cannot, for example, shift the responsibility upon an independent contractor for failure to perform his duty.

9. **Words and phrases. "Proper care" defined.**

By "proper care" is meant such degree of care as will prevent injuries from any cause except those over which the party would have no control, such as vis major acts of public enemies, wrongful acts of third persons, and the like which human foresight could not reasonably be expected to anticipate and prevent.

10. **Appeal and error. Failure to charge jury on doctrine of res ipsa loquitur is reversible error.**

The failure to properly instruct the jury on the doctrine of res ipsa loquitur in a case when it applies, is a misdirection and is not cured by Act 1911, ch. 32, Shannon's Ann. Code, sec. 6351.

Appeal in Error, from Circuit Court, Shelby County; Hon. A. B. Pittman, Judge.

Reversed and remanded.

D. W. DeHaven and W. M. Stanton, all of Memphis, for plaintiff in error.

A. B. Knipmeyer, of Memphis, for defendant in error.

HEISKELL, J.    This case was before the Court of Civil Appeals in 1923, on appeal by Mrs. Northcross, and the judgment against her in the circuit court of Shelby county, Division 3, was reversed and the cause remanded for a new trial.    After some time the cause was again tried in the circuit court of Shelby county, and verdict and judgment rendered in favor of defendants.

The case was originally brought by Mrs. Lee Wilson Northcross, doing business in the city of Memphis, as the Northcross Mantel & Grate Company, against Loew's Memphis Theatre Company, Fleischmann Construction Company, Tennessee Wrecking Company, S. Malkin Company, and Loew's Lyceum Theatre Company, but before the first trial below, the plaintiff took a voluntary nonsuit as to the Tennessee Wrecking Company, S. Malkin Company and Loew's Lyceum Theatre Company.    Therefore, no further reference will be made to the three defendants as to whom a nonsuit was taken.

The plaintiff sues to recover damages to her goods, merchandise and business, which, according to the allegations of her declaration, resulted from the collapse and fall of a building adjoining the building occupied by the plaintiff on Union avenue, in the city of Memphis. The defendants filed pleas of not guilty to plaintiff's declaration, and on the issue thus made the case was tried before the court and jury, in Division 3, of the circuit court of Shelby county, Tennessee, and the jury found the issues for the defendants, and judgment was rendered, dismissing plaintiff's suit at her cost.    The plaintiff moved for a new trial on several grounds, but her motion was overruled, and she prayed and obtained an appeal in the nature of a writ of error to this court.

It appears from the record that appellant was the owner of a lease to the basement, first floor and the rear portion of the second floor of a three-story brick store building, No. 73 Union avenue, Memphis, and known as the "Meacham Building."    Plaintiff's lease was for five years, beginning September 1, 1919.    Plaintiff's husband, the late W. J. Northcross, had occupied the premises for a number of years, and had there carried on a mantel, grate, tile and brass goods business, under the name of the "W. J. Northcross Mantel & Grate Co." Mr. Northcross died on November 18, 1918, and under his will his entire estate, including the business located in the Meacham Building, passed to Mrs. Northcross.    Thereafter, appellant's son, Wilson J. Northcross, conducted said business for her.

No. 73 Union avenue, known as the Meacham Building, is located on the south side of Union avenue, between Main and Front streets.

Next, east of the Meacham Building, was located a three-story brick store building, No. 75 Union avenue, known as the Wood Building, and next east was No. 79 Union avenue. All three buildings were old.

It appears that Julian and Hunt Phelan, the owners of the property, No. 79 Union avenue, next east of the Wood Building, executed a ninety-nine year lease to Loew. This lease also embraced two other old store houses, Nos. 83 and 85 Union avenue, adjoining No. 79 on the east.

There was proof tending to show that the wall between the Wood Building, No. 75 Union avenue, and the Loew Building, No. 79 Union avenue, was used in common by both buildings and was a party wall. This wall was old and rotten. The proof tended to show that this wall stood partly on the Wood property and partly on the property owned by the Phelans and leased to Loew.

It appears that this wall rested about one foot in the earth, on a clay bank, held by retaining walls located about three feet from the wall on either side and extending from the floor of the basements of the two buildings up to a height of about the street level. The mortar in the old wall was rotten and had no binding quality. The wall was seventeen inches thick at the base, and was three stories in height above the street level.

About October 1, 1919, Loew undertook to wreck the old building, No. 79 Union avenue, included in the lease from the Phelans. The purpose was to build a moving picture theatre on the site. The Fleischmann Construction Co. was employed by Loew's Memphis Theatre Co. to wreck the old buildings. A permit was issued by the city of Memphis to the Fleischmann Construction Co., authorizing it to wreck these buildings.

On Sunday, October 26, 1919, the Loew Building and the Wood Building, at least partially, collapsed and fell in.

At the time of the collapse the work of demolition of the Loew Building, No. 79 Union avenue, had progressed to the point where the floor joists had been taken out, at the first floor level; all the interior divisions in the building had been removed; the weather covering removed off the roof, and all the windows removed. The removal of the weather coating from off the roof permitted the rains to come through and wet the bank on which the old party wall stood.

Plaintiff's declaration contains two counts. In the first count plaintiff alleges, in substance, that the defendants were guilty of negligence in the demolition of the Loew Building. The second count contains, substantially, the same facts as the first count, except that there is no averment that the defendants caused the wall to fall by tearing down and removing the Theatre Company's building in a careless, negligent and improper manner. But, by an amendment

made by leave of the court and entered in the minutes before the first trial below, the second count was amended so as to allege that "the house under process of demolition by defendants (the Theatre Company's building) collapsed and fell in, especially the west wall thereof," etc., and that by reason of the falling of said house or the west wall thereof, "the plaintiff's property and business was damaged," etc.

The Court of Civil Appeals held, on the former appeal of the case, that the rule res ipsa loquitur applied under plaintiff's second count. The case was reversed and remanded because of the refusal of the circuit judge to give effect to this rule.

When on Sunday, October 26, 1919, the Loew Building and its west wall fell, plaintiff insisted that the result of the collapse was to knock down the Wood Building, next east of the Meacham Building; that a large mass of debris of the Wood Building was left hanging down from the Meacham Building, which imperiled the party wall between the Wood Building and the Meacham Building, and threatened to pull it out and did, in fact, crack the wall. To safeguard the Meacham Building (where the plaintiff was a tenant) the building inspector of the city of Memphis employed E. J. Pearson, contractor, to enter the Meacham Building, and erect shoring along the inside of the east wall, from cellar to roof. Plaintiff's place of business was closed while the work was being done; her business was interrupted, "Danger-Keep Out" signs placed on the front of her premises; a fence was erected out in Union avenue, along the front of the collapsed building and extending across the front of the store. She insists that her ingress and egress was interfered with and the time of her employees lost.

The city authorities in December, 1919, ordered the owner of the Meacham Building to make it safe or take it down. The owner elected to take the building down and notified plaintiff to move out, which she did January 1, 1920. Later the owner compensated the plaintiff for the cancellation of her lease from January 1, 1920, to September 1, 1924. But plaintiff recovered nothing for the damage to her leasehold from the period from October 26, 1919, to January 1, 1920, and it is for that period only that she is seeking to hold defendants liable.

Appellant brings the case to this court by an appeal in the nature of a writ of error and assigns errors.

The first assignment is "the trial judge erred in charging the jury as follows:

"'Gentlemen: I omitted to make a distinction between the two defendants that was necessary for me, under the law, to make. So far as the Construction Company is concerned, the burden of proof is upon the plaintiff, to show that the company negligently

carried on the work, and which was the cause of the Wood Building falling, and so far as the Company is concerned, it makes no difference who owned the wall, or whose property the wall stood on. The burden of proof remains all the while upon the plaintiff, and she must make out her case against the defendant by the preponderance of the evidence, that the company was guilty of negligence which caused the wall to fall. And, as I said, that same rule applies as far as the first count of the declaration is concerned to the Theatre Company. Now, there is this distinction between these two defendants that you must bear in mind in weighing the evidence.' ''

The third assignment is ''the trial judge erred in charging the jury as follows:

''In other words, under the first count the plaintiff has the laboring oar; the plaintiff must show that these people were negligent and that that caused the wall to fall; whereas; under the second count, if the jury finds that the wall was on the property of the Theatre Company, then the Theatre Company has got to prove approximately that it wasn't negligent and that the wall fell through no negligence of theirs. Now, that makes the entire difference, so far as the lawsuit is concerned whether that wall was exclusively on the Wood property, or partly on the Wood property, and the Theatre Company's—it is a question of who the burden of proof is on.''

The seventh assignment is ''the court erred in refusing to give the following special instructions requested by the plaintiff:

''The court charges you, that the fall of the building, No. 79 Union avenue, the building held by Loew's Memphis Theatre Company, under a ninety-nine-year lease and under course of demolition by the Fleischmann Construction Co., raises a presumption of negligence on the part of the defendants. When a building falls, in the absence of explanatory circumstances, negligence will be presumed. The fall of the building is evidence in behalf of the plaintiff of the negligence of the defendants, and puts upon them the burden of showing that the fall of the building was not due to want of reasonable care on their part.''

It is difficult to dispose of these assignments separately. It will be more satisfactory to discuss the general principle running through and bearing upon all of them.

In so far as the case proceeds upon the theory that the owner or part owner of a defective, dangerous wall, is liable as for maintaining a nuisance, the ownership or part ownership of the wall is material, and upon this theory manifestly only Loew's Theatre Company could be held liable because the contractor, the Fleischmann Construction Co., owned no interest in the property and was charged with no duty of inspection or keeping safe upon the idea of owner-

ship. The contractor was under no obligation and confronted with no liability until such time as it began to demolish the building on the Loew's Theatre lot. As to the contractor, however, in so far as the case proceeds upon the idea that the said building fell while in process of demolition and that the damage sued for was caused by this fall, the doctrine of res ipsa loquitur applies and as to the contractor from the fall of the building there is an inference of negligence, which unless overcome by proof, on the part of the contractor, is to be taken into account and weighed by the jury in determining the issue of negligence or no negligence. Upon this theory of the case the owner is also liable because the owner cannot shift his liability to the contractor, no matter how much the contractor may be liable.

The idea of liability based upon the doctrine of res ispa loquitur creating an inference of negligence from the fall of the building, seems to have been missed entirely by the trial judge. He not only failed to give plaintiff the benefit of this theory of the case, but affirmatively excluded its application to the contractor company.

The unexplained falling of the building or other structure creates a presumption of negligence. Northcross v. Loew et al., — Opinion Court Civil Appeals; 29 Cyc., 593; Ryder v. Kinsey, 62 Minn., 85, 34 L. R. A., 557; Mullins v. St. John, 57 N. Y., 567, 15 Am. Rep., 530; Morris v. Stiebel, 81 Hun. (N. Y.), 1; Simmons v. Everson, 124 N. Y., 309; 20 R. C. L., 109; 4 R. C. L., p. 610; Cork v. Blossom (Mass.), 26 L. R. A., 256; Kappas v. Appel, 19 Ill. App., 170; Klander v. McGrath (Pa.), 78 Am. Dec., 329; Tupen v. Taylor, 141 S. W. 1062; 1 Sherman and Redfern on Neg., secs. 59, 60; 2 Thomp. Neg., 1231, 1 Thomp. Neg., 1213 and 1260.

In Hall v. Gage (Ark.), 172 S. W., the lower court had refused to give the following instruction asked by the plaintiff:

"The court instructs the jury that the collapse of the building or falling of a wall is prima-facie evidence of negligence and imposes the burden upon the owner to show that the accident happened without his negligence."

The refusal to give the instruction was held error.

Where a thing which has caused an injury is shown to be under the management of defendant, and the accident is such as in the ordinary course of things, does not happen, if those having the management exercise the proper care, the accident affords reasonable evidence, in the absence of explanation, that it arose from want of care. De Clopper v. Nashville Railway, 134 S. W., 609; R. R. v. Mingle, 103 Tenn., 667; Transit Co. v. Venable, 105 Tenn., 460; R. R. v. Kartright, 110 Tenn., 277, 29 Cyc. 591; Sheridan v. Foley, 58 N. J. L., 232; Griffin v. Manice, 166 N. Y., 189.

Where a contractor is in charge of the erection or demolition of a building, and the building falls, the maxim res ipsa loquitur obtains, and the contractor will be required to show the accident happened through no want of care on his part. Dohn v. Dawson, 84 Hun. (N. Y.), 110; Sheridan v. Foley, 58 N. J. L., 230.

The maxim, res ipsa loquitur, is in part based on the consideration that when the management and control of the thing which has produced the injury is exclusively vested in the defendant, it is within his power to produce evidence of the actual cause that produced the accident which the plaintiff is unable to present. Kahn v. Burette, 85 N. Y. S., 1047; Griffin v. Manice, 166 N. Y., 188, 59 N. E., 925; 82 A. S. R., 630, 52 L. R. A., 922; Dohn v. Dawson, 84 Hun (91 N. Y. Supreme), 110.

In Turnpike Co. v. Yates, 108 Tenn., 428, the court said:

"The very fact that the pole fell was prima-facie evidence of negligence, res ipsa loquitur. A presumption of negligence would at once arise. It is not only competent for the jury to infer negligence as a proposition of fact from the proof that the pole was permitted to fall on a traveler as she was in the act of passing through the toll gate, but such proof raises a presumption of negligence against the company and shifts the burden of proof upon it to show that it was guilty of no negligence."

Where res ipsa loquitur applies, the plaintiff need not allege specific acts of negligence. Nashville Railway v. Gregory, 137 Tenn., 422. And if negligence is alleged it is mere surplusage.

Where facts are shown which invoke the doctrine of res ipsa loquitur if there are any facts inconsistent with negligence it is for the defendant to prove them. Bahr v. Lombard, 24 Vroom, 233; Sheridan v. Foley, 58 N. J. L., 230.

It is the general rule that a duty is imposed upon the owner of a building to exercise reasonable care and diligence so that the building will not collapse and cause injury to adjoining owners. 16 R. C. L., p. 1079.

In 1 Thomp. Neg., sec. 1058, it is stated:

"Under the modern conception, the owner of the building is answerable for the failure to exercise reasonable care and skill and this puts him under an affirmative and continuing duty of inspection, but exonerates him from liability when the defect would not have been discovered in time to repair before the accident, provided he had discharged this duty of inspection." etc.

The owner of property will be chargeable with knowledge of a defect which a reasonable inspection would have revealed. Patterson v. Brusing Co. (S. D.), 91 N. W., 336.

This duty of exercising care and diligence with respect to the safety of 79 Union avenue, could not be devolved upon the Fleischmann Construction Co., by Loew's Memphis Theatre Co., the owner, so as to discharge the owner from liability. Both owner and contractor may be liable if negligent.

In sec. 1059, 1 Thomp. Neg., it is stated:

> "This duty of exercising care being absolute in its nature cannot be devolved upon others, but it is one of those absolute duties which rests upon every owner of fixed property. It is therefore quite immaterial by what grade of agent or servant the owner assumes to perform it; he will be answerable for the negligence of that agent or servant, under the rule of respondeat superior. He cannot, for example, shift the responsibility upon an independent contractor in failure to perform his duty."

This rule is expressly recognized and given effect in McHarg v. Newcomer, 117 Tenn., 595, and in Carroll-Blake Construction Co. v. Doyle, 140 Tenn., 166, 176 (a case involving the collapse of a party wall). See also 20 R. C. L., pp. 77, 78; Larson v. St. Ry. Co., 110 Mo. 234, 16 L. R. A., 330.

The "reasonable care and diligence" and "proper care" required of an owner of a building so that the building will not collapse and cause injury to others, means that degree of care that will prevent injuries from any cause except those over which the party would have no control.

In Cork v. Blossom, 162 Mass., 630; 28 L. R. A., 256, the court said:

> " 'By proper care' is meant such degree of care as will prevent injuries from any cause except those over which the party would have no control, such as vis major, acts of public enemies, wrongful acts of third persons, and the like, which human foresight could not reasonably be expected to anticipate and prevent. . . . It is almost needless to add that the fall of the chimney, unless caused by some one or more of the excepted causes, naturally would lead to the inference of an omission of duty in building or maintaining it."

The above has been cited in many other decisions. See also Rider v. Kinsey, 62 Minn., 85; 54 A. L. R., 623; 34 L. R. A., 557.

While some of our cases speak of res ipsa loquitur as shifting the burden of proof, others say the burden does not shift from the plaintiff but res ipsa loquitur may supply an inference of negligence, which in the absence of proof will supply evidence to make out the burden which plaintiff must carry. Whichever be considered the most accurate statement of the law, if there is any practical difference, the plaintiff is entitled to have the question left to the jury under a proper charge defining the effect to be given to facts which

invoke the doctrine. The charge of the court in this case did not do this, and the said assignments point out errors. Turnpike v. Yates, 108 Tenn., 428; Gill v. Brown, 130 Tenn., 174.

The brief for defendants, however, quotes and relies on the Act of 1911, ch. 32, Shannon's Ann. Code, 6351.

"No verdict or judgment shall be set aside or new trial granted by any of the appellate courts of this state, in any civil or criminal cause, on the ground of error in the charge of the judge to the jury, or on account of the improper admission or rejection of evidence, or for error in acting on any pleading, demurrer or indictment, or for error in any procedure in the cause, unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial."

This question is discussed in two cases—Railway & Light Co. v. Dungey, 1 Thomp., 587; Railroad v. Morgan, 5 Thomp., 1, 19-21.

These cases hold that a misdirection to the jury upon a material issue, which prevents a fair consideration of the question is a denial of the constitutional right of trial by jury and that chapter 32, Acts of 1911, was not intended to apply to such a deprivation of constitutional right. We think the errors pointed out prevented plaintiff from receiving a fair consideration by the jury of material questions in the case, and therefore was not harmless error within the purpose and intent of said statute. Therefore, said assignments of error must be sustained and the case reversed and remanded for a new trial.

The ninth, tenth and eleventh assignments are overruled because not supported by any brief or argument. All the other assignments are overruled because they point out no material error in the action of the trial court.

As a result of sustaining the first, third and seventh assignments, the case is reversed and remanded at the cost of defendant.

Owen and Senter, JJ., concur.